OPINION
{¶ 1} Relator, Anthony Fontes, has filed a complaint for a writ of mandamus against respondents, the Mahoning County Board of Elections (Board) and its members, Michael Morley, Robert Wasko, Mark Munroe, and Clarence Smith.
 {¶ 2} The case centers on the City of Campbell's primary election, which was held September 27, 2005. The parties have stipulated to the following. Relator filed a declaration of intent to run as a write-in candidate for the office of Campbell City Council President. The Board accepted his filing fee and notice of intent on August 8, 2005. No protests were filed against relator.
 {¶ 3} On September 22, 2005, the deputy director of the board of elections, Thomas McCabe, informed relator that there would not be a primary election for the office of city council president. He made this decision after consulting with the Board's legal counsel. The decision was based on the city's charter, which provides in relevant part:
 {¶ 4} "In case there shall not be, for any office, more than two persons who shall have filed petitions as provided for in this Charter, the said persons shall be the candidates at the regular municipal election, and the primary for the particular office shall not be held." Campbell City Charter, Article VI, Section 6.04.
 {¶ 5} Relator admits that only he and one other candidate are seeking the office of city council president.
 {¶ 6} A relator is entitled to mandamus if: (1) he has a clear legal right to the relief prayed for; (2) the respondent is under a clear legal duty to perform the acts; and (3) the relator has no plain and adequate remedy in the ordinary course of law. State ex rel Berger v. McMonagle
(1983), 6 Ohio St.3d 28, 29, 451 N.E.2d 225.
 {¶ 7} Here, relator seeks a writ ordering respondents to accept his candidacy as a write-in candidate for the office of city council president in the September 27 primary election, to provide a blank space on the primary ballots for his write-in candidacy, and to tabulate all write-in votes he receives. Relator's complaint must fail because he does not have a clear legal right to the requested relief and respondents have no legal duty to hold a primary election for the office of city council president.
 {¶ 8} The Tenth District was faced with very similar facts in Batesv. Board of Elections (May 7, 1987), 10th Dist. No. 87AP-108. In that case, Bates filed a complaint seeking a writ of mandamus ordering the Franklin County Board of Elections to accept his write-in votes and to place his name on the official ballot for the primary election for the office of mayor. No primary election was scheduled. Bates sought to compel the board of elections to conduct a primary and permit him to run as a write-in candidate.
 {¶ 9} The Columbus City Charter provided that there shall be a nonpartisan primary election for municipal officers. It further provided that to have one's name printed on the primary ballot for the office of mayor, a person had to file a petition containing the signatures of one percent of the total number of registered electors in the city not less than 90 days before the primary election date. The charter further provided:
 {¶ 10} "`Notwithstanding the provisions of paragraph (a) of this Section * * * if the number of persons filing such petitions does not exceed, as to any such office, the number of candidates which would be placed upon the ballot at the next regular municipal election, then no primary election should be held for the purpose of nominating candidates for such office to be voted upon at such next regular municipal election. The election officials whose duty it would have been to provide for and conduct the holding of such primary election, declare the results thereof and issue certificates of nomination to the persons entitled thereto if such primary election had been held, shall declare each of such persons filing petitions in accordance with the provisions of paragraph (a) of this Section to be nominated and shall place their names on the ballot at the next regular municipal election in the same manner as though such primary election had been held and such persons had been nominated at such elections.'"
 {¶ 11} The court found that pursuant to the city charter, unless more than two people filed petitions seeking nomination to a particular office, there was to be no primary election for that office. Thus, the court concluded that under the circumstances, the board of elections was not required to hold a primary for the office of mayor. Because there was no allegation that the number of candidates who filed petitions seeking nomination for the office of mayor exceeded the number that would be nominated if a primary were held, the court ruled that the board was not required to hold a primary election.
 {¶ 12} The Campbell City Charter, like the Columbus City Charter inBates, provides that if no more than two persons have filed petitions for a particular office as provided for in the charter, those persons shall be the candidates at the regular municipal election and the primary for that office shall not be held. Campbell City Charter Article VI, Section 6.04. It further provides that candidates for nomination shall file petitions for nomination not less than 90 days before the day of the primary election. Campbell City Charter Article VI, Section 6.03. The petitions for nomination must be signed by not less than 100 qualified electors. Campbell City Charter Article VI, Section 6.03.
 {¶ 13} In this case, relator did not file a petition for nomination. He filed only a declaration to run as a write-in candidate. At the time he filed his intent to run as a write-in, relator should have known that there would be no primary for the office of city council president. Persons filing petitions for nomination to run for city council president had to do so by June 29 (90 days prior to the primary election date). Additionally, according to the City of Campbell 2002 Primary Election Calendar, the candidates' petitions were certified on July 21. Thus, relator should have known that, as of July 21, only one person had filed a petition for nomination for city council president.
 {¶ 14} Relator did not file his intent to run as a write-in candidate until August 8. At this time, it should have been clear to relator that, per the terms of the charter, no primary election would be held for city council president. The charter clearly provides that no primary shall be held unless there are more than two persons who have filed petitions for nomination for a particular office. Since only one person had filed a petition for nomination for city council president, relator should have known that no primary would be held for that office.[1]
 {¶ 15} Arguably, the clerk for the Board should not have accepted relator's filing fee since there was to be no primary election. Since the Board knew as of July 21 that there would be no primary for the office of city council president, it should have refused relator's notice of intent and filing fee. At the hearing on this matter, relator argued that respondents should be estopped from denying him the ability to run as a write-in in a primary election because the clerk, by accepting his filing fee, led him to believe to his detriment that there would be a primary election for the office of city council president with a write-in space provided. However, the Ohio Supreme Court has held that estoppel does not apply against election officials in the exercise of governmental functions. State, ex rel. Shaw v. Lynch (1991), 62 Ohio St.3d 174, 176,580 N.E.2d 1068. Furthermore, "the mistaken advice or opinion of an employee of the board of elections does not estop the board from removing a candidate's name from the ballot." State ex rel. McMillan v. AshtabulaCty. Bd. of Elections (1992), 65 Ohio St.3d 186, 189, 602 N.E.2d 631. Thus, relator's estoppel argument must fail.
 {¶ 16} For the above reasons, we dismiss relator's petition for a writ of mandamus.
 {¶ 17} Final order. Clerk to serve notice as provided by the Civil Rules.
Donofrio, J., concurs.
Vukovich, J., concurs.
DeGenaro, J., concurs.
[1] {¶ a} Although relator has no right to force a primary election for the office of city council president, he may possibly still run as a write-in candidate in the general election. R.C. 3513.041 provides in part:
{¶ b} "A write-in space shall be provided on the ballot for every office, except in an election for which the board of elections has received no valid declarations of intent to be a write-in candidate under this section. Write-in votes shall not be counted for any candidate who has not filed a declaration of intent to be a write-in candidate pursuant to this section. A qualified person who has filed a declaration of intent may receive write-in votes at either a primary or general election. Any candidate, except one whose candidacy is to be submitted to electors throughout the entire state, shall file a declaration of intent to be a write-in candidate before four p.m. of the fiftieth day preceding the election at which such candidacy is to be considered."
{¶ c} According to this statute, the board need not provide a write-in space on the ballot when it has received no valid declarations of intent to be a write-in candidate and any write-in votes shall not be counted. But the charter provides otherwise. It states "[a] space shall be provided for each office to be voted for, at a particular election, wherein the voter may write in the name of any person for whom he may wish to cast a vote." Campbell City Charter, Article VI, Section 6.05. Charter provisions supersede conflicting statutes. Shaw,62 Ohio St.3d at 177. Therefore, at the general election, voters may still write in relator's name for city council president.